**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

_____

KAREN FRIEDLAND,                               :
                                               :
                    Plaintiff                  :
                                               :    C.A. No. 1:13-cv-01417-SLR
              v.                               :
                                               :
UNUM GROUP and UNUM LIFE                       :
INSURANCE COMPANY OF AMERICA,                  :
et al,                                         :
                                               :
                    Defendants                 :
_____


### DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO DISMISS


Dated:  October 7, 2013                    **STEVENS & LEE, P.C.**
                                           John D. Demmy (No. 2802)
                                           1105 North Market Street, 7th Floor
                                           Wilmington, DE 19801
                                           Telephone: (302) 425-3308
                                           Facsimile: (610) 371-8515
                                           E-Mail: jdd@stevenslee.com

                                           E. Thomas Henefer
                                           (Pa. No. 55773 – Pro Hac Vice Pending)
                                           111 North Sixth Street
                                           P.O. Box 679
                                           Reading, PA  19603
                                           Telephone: (610) 478-2000
                                           Facsimile: (610) 988-0803
                                           E-Mail: eth@stevenslee.com

                                           Attorneys for Defendants, Unum Group and
                                           Unum Life Insurance Company of America

# TABLE OF CONTENTS

Page

I.    NATURE AND STAGE OF THE PROCEEDINGS .........................................................1

II.   SUMMARY OF ARGUMENT ....................................................................................1

III.  STATEMENT OF FACTS .........................................................................................2

IV.   ARGUMENT .........................................................................................................3

    A.   Standard of Review ................................................................................3

    B.   Friedland's ERISA Denial-of-Benefit Claim is Time-barred. ..............................4

    C.   In The Alternative, Any Claim For Future Benefits Should Be Dismissed ..........5

    D.   Friedland's Fraud Claim Is Preempted By ERISA And Should Be Dismissed .....5

    E.   Friedland Has Failed To State A Civil RICO Claim ...............................................8

        1.   Required Elements Of A Violation Of § 1962 (c) .........................................8

        2.   Friedland Failed To Allege A Distinct RICO "Enterprise" ...........................9

        3.   Friedland Failed To Allege A Pattern Of Racketeering...............................13

        4.   Friedland Cannot Plead Proximate Causation ...............................................15

        5.   Friedland Lacks Standing To Assert A RICO Claim....................................17

V.    CONCLUSION.....................................................................................................17

# TABLE OF AUTHORITIES

CASES

*Aetna Health, Inc. v. Davila*,
    542 U.S. 200 (2004)................................................................................................5, 7

*Amos v. Franklin Financial Services Corp.*,
    509 Fed. Appx. 165 (3d Cir. 2013)..................................................................17

*Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 457 (2006) .......................................16

*Arthur Andersen LLP v. United States*,
    544 U.S. 696 (2005)....................................................................................15

*Ashcroft v. Iqbal*,
    129 S.Ct. 1937 (2009).....................................................................3, 4, 9, 13

*Assoc. of N.J. Chiropractors v. Aetna, Inc.*,
    2011 WL 2489954 (D. N.J. June 20, 2011) ..................................................11, 12

*Bachman v. Bear, Stearns & Co., Inc.*,
    178 F.3d 930 (7th Cir. 1999) ........................................................................11

*Beck v. Prupis*,
    529 U.S. 494 (2000)....................................................................................16

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007).......................................................................3, 4, 9, 13

*Berger v. Edgewater Steel Co.*,
    911 F.2d 911 (3d Cir. 1990).............................................................................8

*Bessette v. Avco Financial Services, Inc.*,
    230 F.3d 439 (1st Cir. 2000)..........................................................................10

*Bodam v. GTE Corp.*, 197 F. Supp. 2d 1225, 1228 (C.D. Cal. 2002) ..........................12

*Boyle v. United States*,
    56 U.S. 938 (2009)........................................................................................9

*Cedric Kushner Promotions, LTD v. King*,
    533 U.S. 158 (2001)............................................................................9, 10, 13

*Chmielowiec v. H.B. Fuller Co. LTD Plan*,
    2003 WL 21660030 (E.D. Pa. July 15, 2003).........................................................5

*Cruz v. FXDirectDealer, LLC*,
    720 F.3d 115 (2d Cir. 2013).........................................................................10

*The Dow Chemical Co. v. Exxon Corp.,* 30 F. Supp. 2d 673, 700 (D. Del. 1998) ......................11

*Fowler v. UPMC Shadyside,*
   578 F.3d 203 (3d Cir. 2009)..............................................................................3, 4

*Funayama v. Nichia America Corp.,*
   2011 WL 1399844 (E.D. Pa. April 13, 2011), *aff'd*, 482 Fed. Appx. 723 (3d Cir.
   2012), *cert. denied*, 133 S.Ct. 1820 (2013)..............................................................11

*Gasoline Sales, Inc. v. Aero Oil Co.,*
   39 F.3d 70 (3d Cir. 1994)..........................................................................................10

*Gibbons v. Ogden,*
   22 U.S. 1 (1824)...........................................................................................................6

*Gluck v. Unisys Corporation,*
   960 F.2d 1168 (3d Cir. 1992).....................................................................................4

*Halpin v. W.W. Grainger, Inc.,*
   962 F.2d 685 (7th Cir. 1992) ....................................................................................5

*Hemi Group, LLC v. City of New York,*
   559 U.S. 1 (2010)......................................................................................................16

*Hidy v. TIAA Group LTD Benefits Ins. Policy,*
   2002 WL 450084 (D. Del. March 19, 2002) (Robinson, J.)......................................4

*Holmes v. Sec. Investor Prot. Corp.,*
   503 U.S. 258 (1992)..................................................................................................16

*In re Insurance Brokerage Antitrust Litigation,*
   618 F.3d 300 (3d Cir. 2010) ..........................................................................8, 9, 13

*Int'l. Paper Co. v. Ouellette,*
   479 U.S. 481 (1987)....................................................................................................6

*Jaguar Cars, Inc. v. Royal Oaks Motor Car Co.,*
   46 F.3d 258 (3d Cir. 1995) ......................................................................................10

*Kehr Packages, Inc., v. Fidelcor, Inc.,*
   926 F.2d 1406 (3d Cir.), *cert. denied*, 510 U.S. 1222 (1991)....................................5

*Longmont United Hospital v. Saint Barnabas Corp.,*
   2007 WL 1850881 (D. N.J. June 26, 2007).............................................................11

*Lum v. Bank of America,*
   361 F.3d 217 (3d Cir. 2004), *cert. denied*, 543 U.S. 918 (2004).............................13

*Lynch v. Capital One Bank (USA), N.A..,*
   2013 WL 2915734 (E.D. Pa. June 14, 2013).....................................................16, 17

SL1 1260668v1 010305.00256

*Martellacci v. Guardian Life Ins. Co. of America*,
    2009 WL 440289 (E.D. Pa. Feb. 19, 2009) ................................................................8

*McBride v. Hartford Life and Acc. Ins. Co.*,
    2006 WL 279113 (E.D. Pa. 2006) ...........................................................................12

*Miller v. Fortis Benefits Ins. Co.*,
    475 F.3d 516 (3d Cir. 2007)......................................................................................4

*Montesano v. Philadelphia Elec. Co.*,
    1995 WL 217644 (E.D. Pa. April 13, 1995) .............................................................6

*O'Shea v. Mutual Life Ins. Co. of New York*,
    226 F. Supp. 2d 660 (E.D. Pa 2002) .........................................................................5

*Olivet Boys & Girls Club of Reading v. Wachovia Bank N.A.*,
    2009 WL 1911049 (E.D. Pa. July 1, 2009)...............................................................8

*Pilot Life Ins. Co. v. Dedeaux*,
    481 U.S. 41 (1987)..................................................................................................6, 7

*Reeves v. Ernst & Young*,
    507 U.S. 170 (1993)............................................................................................10, 13

*Riverwoods Chappaqua Corp. v. Marine Midland Bank N.A.*,
    30 F.3d 339 (2d Cir. 1994)...................................................................................10, 11

*Romero v. The Allstate Corp.*,
    404 F.3d 212 (3d Cir. 2005)......................................................................................4

*Sedima, S.P.R.L. v. Imrex Co., Inc.*,
    473 U.S. 479 (1985)............................................................................................16, 17

*Shields v. UnumProvident Corporation*,
    415 Fed. Appx. 686 (6th Cir. 2011)........................................................................12

*Simmers v. Hartford Life and Acc. Ins. Co.*,
    2012 WL 1448113 (E.D. Wis. April 25, 2012) .......................................................12

*Simon v. UnumProvident Corp.*,
    2003 WL 23015064 (E.D. Pa. Dec 10, 2003) ...........................................................5

*Skinner v. E.I. Du Pont de Nemours and Co.*,
    2008 WL 2942145 (D. Del. July 30, 2008) ..............................................................4

*South Broward Hospital District v. Medquist, Inc.*,
    516 F. Supp. 2d 370 (D. N.J. 2007) .......................................................................11

*Stoss v. Singer Financial Corp.*,
    2010 WL 678115 (E.D. Pa. Feb. 24, 2010) ............................................................11

(iv)

*Syed v. Hercules Inc.*,
   214 F.3d 155 (3d Cir. 2000)..................................................................................4, 5

*Temple Univ. Children's Medical Center v. Group Health, Inc.*,
   413 F. Supp. 2d 530 (E.D. Pa. 2006) ........................................................................6

*The 1975 Retirement Plan for Eligible Employees of Crucible, Inc. v. Nobers*,
   968 F.2d 401 (3d Cir. 1992), *cert. denied*, 506 U.S. 1086 (1993) ............................6

*United States v. Cohen*,
   301 F.3d 152 (3d Cir. 2002)........................................................................................14

*United States v. Wright*,
   665 F.3d 560 (3d Cir. 2012)........................................................................................13

*Variety Children's Hospital, Inc. v. Century Medical Health Plan, Inc.*,
   57 F.3d 1040 (11th Cir. 1995) ....................................................................................8

*Vartanian v. Monsanto*,
   14 F.3d 697 (1st Cir. 1994) .........................................................................................8

*Wade v. Life Ins. Co. of N.A.*,
   245 F. Supp. 2d 182 (D. Me. 2003) ............................................................................5

*Zahl v. CIGNA Corp.*,
   2010 WL 1372318 (D. N.J. March 31, 2010)..............................................................8

## STATUTES, RULES & REGULATIONS

18 U.S.C. § 1503...........................................................................................................14, 15

18 U.S.C. § 1512...........................................................................................................14, 15

18 U.S.C. §§ 1961 (4) ........................................................................................................9

18 U.S.C. § 1961 (5) ..........................................................................................................13

18 U.S.C. §§ 1962 (4) ........................................................................................................17

18 U.S.C. § 1962 (c) ..................................................................................8, 9, 10, 11, 12, 13

18 U.S.C. § 1962 (d) ......................................................................................................8, 16

29 U.S.C. § 1132 (a) .................................................................................................1, 2, 4, 5

29 U.S.C. § 1144 ...........................................................................................................5, 6

Fed. R. Civ. P. 9 (b) ..........................................................................................................13

Fed. R. Civ. P. 12(b)(6).......................................................................................................5

Delaware Code § 8111 ..................................................................................................................4

**OTHER AUTHORITIES**

U.S. Const. art. VI ......................................................................................................................6

SL1 1260668v1 010305.00256

## I.   NATURE AND STAGE OF THE PROCEEDINGS

Karen Friedland filed this action on August 14, 2013 to challenge Unum Life Insurance

Company of America's ("Unum Life") denial of her claim for ongoing disability benefits under a

long term disability plan (the "Plan") that is regulated by the Employee Retirement Income

Security Act of 1974, 29 U.S.C. §§ 1001-1461 ("ERISA").  Friedland sued both Unum Life and

its parent Unum Group ("Unum") (for ease of reference, Defendants may refer to Unum and

Unum Life collectively as "Unum" unless further delineation is needed for context).  And, rather

than simply seek a remedy under ERISA, Friedland asserted a common law fraud claim and a

civil RICO claim.

Unum and Unum Life have moved to dismiss each Count of the Complaint.

## II.   SUMMARY OF ARGUMENT

As outlined below, Friedland's ERISA claim is time-barred because it was subject to a

one-year statute of limitations and Friedland waited far too long to file suit based on a denial of

benefits occurring in January 2010.[1]   Next, her fraud claim in Count II is preempted by ERISA.

Finally, dismissal of Friedland's RICO claim is required for several reasons.  Her

allegations of a RICO "enterprise" are insufficient because, rather than allege a RICO

"enterprise" that is distinct from the "persons" named as defendants,  Friedland instead accuses

Unum of conspiring with itself, an approach that cannot state a viable RICO claim.  Further,

Friedland failed to properly allege predicate acts; cannot establish that any predicate act was the

proximate cause of her alleged injury; and, lacks standing.

---

[1]     In the alternative, even if Friedland had plead a viable claim under ERISA § 502 (a)(1)(B), which is denied, she is not entitled to recover future benefits for reasons explained below.

## III. STATEMENT OF FACTS

As explained in the Complaint, Friedland was a plan participant in an ERISA-governed employee welfare benefit plan established and maintained by her former employer which provided disability benefits through a group disability policy issued by Unum Life.  [Complaint, ¶ 3].  Friedland began receiving disability benefits due to back problems in the mid-1990s and her benefits continued (either on a total or a partial disability basis) through 2009.  [Complaint, ¶¶ 10 – 13].  In January of 2010, however, Unum Life denied her claim for ongoing benefits under the Plan.  [Complaint, ¶ 14].  Friedland challenges this denial of benefits, seeking relief under ERISA § 502 (a)(1)(B), 29 U.S.C. § 1132 (a)(1)(B).  [Complaint, ¶¶ 18 and 44].

But Friedland does not stop with ERISA.  She also asserts a claim for common law fraud in Count II.  However, the basis for her claim is not set forth in the Complaint (much less with particularity) other than her conclusory allegation that "[b]y its actions as set forth herein above, Unum defrauded Karen."  [Complaint, 46].

Finally in Count III, Friedland asserts claims under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961 – 1968 ("RICO").  Here, she claims Unum devised a plan of unfairly targeting disability claims for denial or termination.  [Complaint, ¶ 5].  She characterizes the alleged scheme as a "RICO Plan" carried out by an alleged RICO "enterprise" consisting of:

> Unum executives at the company's highest levels, Unum claims-handling personnel, Unum's in-house attorneys, Unum medical staff and investigators, cooperating employer group disability insurance policyholders, outside independent medical exam (or "IME") doctors, outside investigators, outside surveillance technicians, outside vocational and functional capacity consultants, outside accountants and outside attorneys (the "Enterprise").

[Complaint, ¶ 6].

Notably, the so-called "RICO Plan" consists *exclusively* of Unum Life's handling of disability insurance claims through alleged practices such as: transferring claim decision authority from doctors to claim personnel; using ERISA as a strategy to deny claims; deciding claims for financial reasons; paying bonuses to incentivize employees to deny claims; pressuring physician employees; relying on unqualified employees; targeting high dollar claims for termination; using "roundtables" as a pretext to deny claims; and selectively deciding when to request independent medical examinations (or "IMEs") based on whether an IME was likely to support a claim denial. [Complaint, ¶¶ 21, 24 – 40, 51]. In short, while Friedland claims the so-called "enterprise" was "separate from Unum's formal structure and operation" [Complaint, ¶ 6], her allegations address nothing other than Unum Life's claims handling practices.

## IV. ARGUMENT

### A. Standard of Review

Two recent Supreme Court cases (*Twombly* and *Iqbal*) substantially raised the bar for plaintiffs trying to plead claims in Federal Court. Under the new pleading standards, Friedland "must allege facts that 'raise a right to relief above the speculative level . . .'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Mere "conclusory" allegations will not suffice. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009). She must allege "more than labels and conclusions" because "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 & n.3. Neither legal conclusions nor "[t]hreadbare recitals of the elements of a cause of action" will suffice. *Iqbal*, 129 S.Ct. at 1949-1950. As the Third Circuit explained in *Fowler v. UPMC Shadyside,* 578 F.3d 203, 210-211 (3d Cir. 2009), the Court should "disregard any legal conclusions" in reviewing the Complaint.

Friedland must also plead facts showing a "plausible entitlement to relief." *Id.* at 557-562 (internal quotation marks omitted). There must be "facial plausibility" -- which exists only

if the allegations "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556)). Plausibility demands "more than a sheer possibility that a defendant has acted unlawfully." *Id*.

Thus, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal*, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 557)). And, critically, a Court's assessment of plausibility is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S.Ct. at 1949-1950. Thus, "a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Fowler*, 578 F.3d at 211.

**B.    Friedland's ERISA Denial-of-Benefit Claim is Time-barred.**

ERISA does not contain a statute of limitations for non-fiduciary claims brought under ERISA § 502 (a)(1)(B), 29 U.S.C. § 1132 (a)(1)(B). In the absence of such a limitations period, courts apply the statute of limitations for the state law claim that is most analogous a claim for benefits under ERISA. *Syed v. Hercules Inc.*, 214 F.3d 155, 159 (3d Cir. 2000); *Gluck v. Unisys Corporation*, 960 F.2d 1168, 1179-1180 (3d Cir. 1992). Specifically, the Court "borrows" the most analogous statute of limitations from the forum state. *Miller v. Fortis Benefits Ins. Co.*, 475 F.3d 516, 520 n.2 (3d Cir. 2007); *Romero v. The Allstate Corp.*, 404 F.3d 212, 220 (3d Cir. 2005); *Gluck*, 960 F.2d at1180.

The Delaware statute of limitations most analogous to a claim under ERISA § 502 (a)(1)(B) is the one-year statute of limitations under Delaware Code § 8111. *Syed,* 214 F.3d at 160-161; *Skinner v. E.I. Du Pont de Nemours and Co.*, 2008 WL 2942145 at * 3 (D. Del. July 30, 2008) (Robinson, J.); *Hidy v. TIAA Group LTD Benefits Ins. Policy*, 2002 WL 450084 at * 2 (D. Del. March 19, 2002) (Robinson, J.). According to the Complaint, Friedland's benefits were

4

denied in January 2010. [Complaint at ¶ 14]. Her claim is therefore barred by the one-year statute of limitations. *Syed*, 214 F.3d at 160-161.

### C.     In The Alternative, Any Claim For Future Benefits Should Be Dismissed

Even if Friedland had a viable claim under ERISA § 502 (a)(1)(B), which is denied, she cannot recover future benefits from the Court. *Simon v. UnumProvident Corp.*, 2003 WL 23015064, * 1 (E.D. Pa. Dec 10, 2003); *O'Shea v. Mutual Life Ins. Co. of New York*, 226 F. Supp. 2d 660 (E.D. Pa 2002). Instead, "[g]iven that the circumstances affecting a claimant's eligibility for benefits may change, the insurance plan's administrator retains the authority to evaluate continuing eligibility." *Wade v. Life Ins. Co. of N.A.*, 245 F. Supp. 2d 182, 188 (D. Me. 2003)*; See also Halpin v. W.W. Grainger, Inc.*, 962 F.2d 685, 697 (7th Cir. 1992); *Chmielowiec v. H.B. Fuller Co. LTD Plan*, 2003 WL 21660030 at * 4 (E.D. Pa. July 15, 2003). Accordingly, even if Count I is not dismissed in its entirety, Friedland's claim for future benefits [Complaint ¶¶ 18 and 44] should be dismissed.

### D.     Friedland's Fraud Claim Is Preempted By ERISA And Should Be Dismissed

Friedland's fraud claim is directly related to the administration of benefits allegedly due under an employee welfare benefit plan that Friedland concedes was governed by ERISA. [Complaint at ¶¶ 3, 18, 44]. Accordingly, Count II is preempted -- both by "statutory" and "conflict" preemption -- and should be dismissed because the facts alleged, even if true, would not support a claim for relief under the state law claim asserted. 29 U.S.C. § 1144; *Kehr Packages, Inc., v. Fidelcor, Inc.*, 926 F.2d 1406 (3d Cir.), *cert. denied*, 510 U.S. 1222 (1991) (affirming dismissal of complaint under Rule 12(b)(6)).

As the Supreme Court has explained: "[T]he purpose of ERISA is to provide a uniform regulatory regime over employee benefit plans." *Aetna Health, Inc. v. Davila*, 542 U.S. 200, 208

(2004).  This goal is achieved primarily through a comprehensive statutory preemption provision that preempts all state laws that "relate to" ERISA plans.  29 U.S.C. § 1144.

The Supreme Court has repeatedly emphasized that ERISA's preemption provision is extremely broad.  *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 45-46 (1987) ("the express preemption provisions of ERISA are deliberately expansive. . .").  As the Third Circuit explained in *The 1975 Retirement Plan for Eligible Employees of Crucible, Inc. v. Nobers*, 968 F.2d 401, 406 (3d Cir. 1992), *cert. denied*, 506 U.S. 1086 (1993), a state-law claim "relates to" an ERISA plan if "the existence of an ERISA plan was a crucial factor in establishing liability, and the trial court's inquiry would be directed to the plan . . . ."

Here, Friedland's claim plainly "relates to" the Plan.  After all, she has no viable claim unless she can demonstrate that the denial of her claim for benefits was *improper under the terms of the Plan itself*.  Her fraud claim therefore "relates to" the Plan and is preempted by ERISA's _statutory_ preemption provision.  29 U.S.C. § 1144.  *E.g.*, *Nobers*, 968 F.2d at 406; *Temple Univ. Children's Medical Center v. Group Health, Inc.*, 413 F. Supp. 2d 530, 536 (E.D. Pa. 2006); *Montesano v. Philadelphia Elec. Co.*, 1995 WL 217644 at * 1 (E.D. Pa. April 13, 1995).

Friedland's claim is also preempted under principles of _conflict_ preemption.  Conflict preemption is neither novel nor limited to ERISA.  Rather, it arises from the Supremacy Clause under which federal law is the "supreme Law of the Land…."  U.S. Const. art. VI; *Int'l. Paper Co. v. Ouellette*, 479 U.S. 481, 491 (1987).  For nearly two centuries, the Supreme Court has recognized that the Supremacy Clause requires preemption of state laws that conflict with federal laws.  *Gibbons v. Ogden*, 22 U.S. 1, 210-11 (1824) (where a state law "come[s] into collision with an act of Congress," the state law "must yield to" federal law).

SL1 1260668v1 010305.00256

Conflict preemption bars Friedland's fraud claim because of Congress' intent to create within ERISA § 502(a) a series of clearly defined -- and *exclusive* -- civil remedies.  The Supreme Court has emphasized this point clearly (and often):

> In sum, the detailed provisions of §502(a) set forth a comprehensive civil enforcement scheme that represents a careful balancing of the need for prompt and fair claims settlement procedures against the public interest in encouraging the formation of employee benefit plans.  The policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA. . . .  *The deliberate care with which ERISA's civil enforcement remedies were drafted and the balancing of policies embodied in its choice of remedies argue strongly for the conclusion that ERISA's civil enforcement remedies were intended to be exclusive.*

481 U.S. at 54 (emphasis added).

The Supreme Court revisited conflict preemption in *Aetna Health, Inc. v. Davila*, 542 U.S. 200 (2004).  The Court noted that ERISA's "comprehensive legislative scheme" includes integrated enforcement provisions which are "essential to accomplish Congress' purpose of creating a comprehensive statute for the regulation of employee benefit plans."  *Id*. at 208.

Next, citing *Pilot Life*, the Court reiterated that the policy choices reflected in ERISA's exclusive remedy provisions would be "completely undermined" if plan participants were allowed to pursue state law remedies Congress elected to omit under ERISA.  *Id*. at 208-209. Finally, in a holding that undermines any argument that state common law remedies survive conflict preemption, the *Davila* Court held:

> [A]ny state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore preempted.

542 U.S. at 209; *see also* 542 U.S. at 214 n. 4.

Given the breadth of ERISA's statutory preemption provision, and the clear Supreme Court precedent applying conflict preemption to ERISA, it comes as no surprise that courts -- including the Third Circuit -- have routinely held that ERISA preempts fraud claims.  *E.g.*, *Berger v. Edgewater Steel Co.*, 911 F.2d 911 (3d Cir. 1990); *Zahl v. CIGNA Corp.*, 2010 WL 1372318 (D. N.J. March 31, 2010).[2]  Friedland's fraud claim can fare no better.

### E.   Friedland Has Failed To State A Civil RICO Claim

Friedland purports to assert RICO claims under 18 U.S.C. §§ 1962 (c) and 1962 (d). Under § 1962 (c), it is "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."  Section 1962 (d) makes it unlawful "for any person to conspire to violate" § 1962 (c).

Friedland has not, and cannot, properly plead the elements of a claim under § 1962 (c). Further, her inability to properly plead a claim under § 1962 (c) requires dismissal of her conspiracy claim under § 1962 (d) as well.  *In re Insurance Brokerage Antitrust Litigation*, 618 F.3d 300, 373 (3d Cir. 2010) ("a § 1962 (d) claim must be dismissed if the complaint does not adequately allege 'an endeavor which, if completed, would satisfy all of the elements of a substantive [RICO] offense.") (citation omitted).

### 1.   Required Elements Of A Violation Of § 1962 (c)

To properly plead a violation of § 1962 (c), Friedland "must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."  *In re Insurance Brokerage*, 618

---

[2]   *See also Vartanian v. Monsanto*, 14 F.3d 697 (1st Cir. 1994); *Variety Children's Hospital, Inc. v. Century Medical Health Plan, Inc.*, 57 F.3d 1040 (11th Cir. 1995); *Olivet Boys & Girls Club of Reading v. Wachovia Bank N.A.*, 2009 WL 1911049 (E.D. Pa. July 1, 2009); *Martellacci v. Guardian Life Ins. Co. of America*, 2009 WL 440289 (E.D. Pa. Feb. 19, 2009).

F.3d at 362 (citation omitted).  Importantly, the heightened pleading standards of *Iqbal* and

*Twombly* apply with full force to civil RICO claims under of § 1962 (c):

> In any case, it is clear after *Twombly* that a RICO claim must plead
> facts plausibly implying the existence of an enterprise with the
> structural attributes identified in *Boyle*:    a shared "purpose,
> relationships among those associated with the enterprise, and
> longevity sufficient to permit these associates to pursue the
> enterprise's purpose."

*In re Insurance Brokerage*, 618 F.3d at 369-370 (citation omitted).

Thus, in pleading a RICO claim, Friedland "must allege facts that 'raise a right to relief

above the speculative level'" *Twombly*, 550 U.S. at 555, and may not rest on mere "conclusory"

allegations. *Iqbal*, 129 S.Ct. at 1950.  She may not rely on "[t]hreadbare recitals of the elements

of a cause of action" *Iqbal*, 129 S.Ct. at 1949-1950, but must plead facts showing a "plausible

entitlement to relief."  *Twombly*, 550 U.S. at 557-562 (internal quotation marks omitted).  As

outlined below, Friedland failed to comply with these rigorous standards.

### 2.    Friedland Failed To Allege A Distinct RICO "Enterprise"

Friedland's RICO claim first runs aground on her inability to properly allege a RICO

"enterprise" that is separate from the "persons" (Unum and Unum Life) she sued.  Under 18

U.S.C. §§ 1961 (4), an "enterprise" includes "any individual, partnership, corporation,

association, or other legal entity, and any union or group of individuals associated in fact

although not a legal entity."  *Id*. at 362-63.  An "association-in-fact" enterprise "must have at

least three structural features:  a purpose, relationships among those associated with the

enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose."

*Boyle v. United States*, 56 U.S. 938, 946 (2009).

Importantly, the statute requires that the RICO "person" and the RICO "enterprise" be

"distinct."  *Cedric Kushner Promotions, LTD v. King*, 533 U.S. 158, 162 (2001).  As the

Supreme Court explained, "to establish liability under  § 1962 (c), one must allege and prove the

existence of two distinct entities:  (1) a 'person'; and (2) an enterprise that is not simply the same 'person' referred to by a different name."  *Id*. at 161.  Further, a RICO plaintiff must show that the RICO "person" or defendant "conducted or participated in the conduct of the '*enterprise's* affairs,' not just their *own* affairs."  *Id*. at 163 (quoting *Reeves v. Ernst & Young*, 507 U.S. 170, 185 (1993)).

Under Third Circuit law, "a corporation generally cannot be a defendant under section 1962 (c) for conducting an "enterprise" consisting of its own subsidiaries or employees, or consisting of the corporation itself in association with its subsidiaries or employees."  *Gasoline Sales, Inc. v. Aero Oil Co*., 39 F.3d 70, 73 (3d Cir. 1994).  This is because the actions of a corporation's agents are the corporation's own actions, and, therefore, the distinctiveness requirement for pleading separate RICO  "persons" and "enterprises" cannot be met by suing a corporation as the RICO person based on an alleged "enterprise" consisting of the corporation's subsidiaries, employees or agents.  *Jaguar Cars, Inc. v. Royal Oaks Motor Car Co*., 46 F.3d 258, 268 (3d Cir. 1995) (in corporate context, corporation cannot be held liable under § 1962 (c) unless it engages in racketeering activity as a distinct person in a distinct enterprise).

The Supreme Court also addressed this issue in *Cedric Kushner Promotions,* where the Court held that a corporation's owner could be sued as a RICO person -- but distinguished that type of claim from one in which a corporation is alleged to be a RICO person based on an alleged association with its own employees.  533 U.S. at 164.  The Court cited with approval the Second Circuit's decision in *Riverwoods Chappaqua Corp. v. Marine Midland Bank N.A.*, 30 F.3d 339 (2d Cir. 1994), to explain why a RICO claim against a corporation based on an alleged association with its own employees and agents could not be sustained.  *Id*.  Notably, the Second Circuit reaffirmed this approach just this year in *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 121 (2d Cir. 2013).  *See also*, *Bessette v. Avco Financial Services, Inc.*, 230 F.3d 439, 449 (1st

Cir. 2000); *Bachman v. Bear, Stearns & Co., Inc.*, 178 F.3d 930, 932 (7th Cir. 1999); *Riverwoods Chappaqua Corp. v. Marine Midland Bank N.A.*, 30 F.3d 339 (2d Cir. 1994).

Not surprisingly, District Courts within the Third Circuit have faithfully applied this rationale, consistent with Third Circuit precedent. For example, this Court held in *The Dow Chemical Co. v. Exxon Corp.*, that for purposes of § 1962 (c), "a corporation is not distinct from its subsidiaries, relatives, agents and affiliates." 30 F. Supp. 2d 673, 700 (D. Del. 1998) (Robinson, J.). Other courts have followed this same approach. *E.g., Funayama v. Nichia America Corp.*, 2011 WL 1399844 at * 22 (E.D. Pa. April 13, 2011), *aff'd*, 482 Fed. Appx. 723 (3d Cir. 2012), *cert. denied*, 133 S.Ct. 1820 (2013); *Stoss v. Singer Financial Corp.*, 2010 WL 678115 at * 5-6 (E.D. Pa. Feb. 24, 2010); *South Broward Hospital District v. Medquist, Inc.*, 516 F. Supp. 2d 370, 389 (D. N.J. 2007); *Longmont United Hospital v. Saint Barnabas Corp.*, 2007 WL 1850881 at *9-10 (D. N.J. June 26, 2007).

Importantly, the rule that "a corporation is not distinct from its subsidiaries, relatives, agents and affiliates" for § 1962 (c) has been applied in the context of insurance companies numerous times. For example, in *Assoc. of N.J. Chiropractors v. Aetna, Inc.*, 2011 WL 2489954 (D. N.J. June 20, 2011), the plaintiffs claimed a health insurer, its subsidiaries and several outside vendors (including an overpayment collection company and a collections attorney) acted as a RICO "enterprise" by improperly seeking recovery of medical claim payments from chiropractors. The Court dismissed the RICO claim because the alleged "enterprise" was not distinct from Aetna:

> Because a corporate entity may not be both the person and the RICO enterprise, to be liable as a defendant under section 1962 (c), a corporation must associate with others to form an enterprise that is sufficiently distinct from itself. *In the present case, the alleged association-in-fact enterprise consists of Aetna, Inc., several of its subsidiaries and affiliates, and third-parties acting as Aetna's agents. This is not sufficient to fulfill the distinctiveness requirement of § 1962 (c).*

11

2011 WL 2489954 at * 6 (emphasis added).

Moreover, such claims have been tried -- and failed -- against Unum before.  In *Bodam v. GTE Corp.*, the Court rejected a similar RICO claim, holding:  "Bodam is essentially alleging that UNUM 'conducted the affairs of' or 'associated with' itself.  Such allegations contradict the plain language of § 1962 (c)."  197 F. Supp. 2d 1225, 1228 (C.D. Cal. 2002).

More recently, the Sixth Circuit rejected a RICO claim against Unum Group in *Shields v. UnumProvident Corporation*, 415 Fed. Appx. 686 (6th Cir. 2011).  There, the plaintiffs alleged that Unum should be held liable under § 1962 (c) based on an alleged enterprise consisting of Unum's "subsidiaries, affiliates, wholly owned companies, customers, policy holders, claimants, independent contractors, and governmental and nongovernmental regulators."  415 Fed. Appx. at 691.  The Court rejected this claim, holding:

> [T]he Plaintiffs' allegations appear to relate only to *Unum's* alleged bad faith claim handling. Yet a corporation cannot become an enterprise distinct from itself for RICO purposes.   Accordingly, the Plaintiffs fail to state a RICO claim.

415 Fed. Appx. at 691. [3]

As the insurance cases demonstrate, a RICO enterprise cannot be created through allegations that an insurer, its affiliated corporate entities, employees and agents combined to wrongly deny insurance claims.  Such claims fail because the alleged RICO enterprise is simply not distinct from the alleged RICO person.  *Simmers v. Hartford Life and Acc. Ins. Co*., 2012 WL 1448113 (E.D. Wis. April 25, 2012); *McBride v. Hartford Life and Acc. Ins. Co*., 2006 WL 279113 (E.D. Pa. 2006).

Friedland has alleged nothing more here.  Indeed, the sole focus of Friedland's RICO claim is her allegation of alleged "bad faith" claims handling practices -- which she collectively

---

[3]    Although *Shields* is unpublished, it is cited here for its persuasive value as it addresses the precise question presented here and involves Unum Group.

refers to as a "RICO Plan" -- such as giving claim personnel unwarranted discretion on medical issues, deciding claims for financial reasons, pressuring physician employees for opinions, targeting high dollar claims, and selectively deciding whether to request IMEs based on anticipated outcomes.  [Complaint, ¶¶ 21, 24 – 40 and 51].

But a conclusory moniker like "RICO Plan" is no substitute for pleading a *plausible factual basis* for a claim.  *In re Insurance Brokerage*, 618 F.3d at 369-70 (applying *Iqbal* and *Twombly* pleading standards to allegation of a RICO enterprise).  Because Friedland failed to allege that either Unum or Unum Life "conducted or participated in the conduct of the '*enterprise's* affairs,' not just their *own* affairs," *Cedric Kushner Promotions,* 533 U.S. at 162 (quoting *Reeves*, 507 U.S. at 185), her RICO claim should be dismissed.

### 3.    Friedland Failed To Allege A Pattern Of Racketeering

To establish a RICO violation under 18 U.S.C. § 1962 (c), Friedland must allege a "pattern of racketeering activity" including at least two predicate acts of racketeering activity occurring within a ten-year period.  18 U.S.C. § 1961 (5).  Here, she claims the "predicate acts" consist of mail fraud and two forms of obstruction of justice.  The Complaint, however, fails to properly allege a "pattern of racketeering activity."

First, to allege mail fraud, Friedland must allege (1) a scheme to defraud, (2) use of the mails to perpetuate the scheme; and (3) intent to defraud.  *United States v. Wright*, 665 F.3d 560, 572-73 (3d Cir. 2012).  She must also allege "some sort of fraudulent misrepresentation or omission reasonably calculated to deceive persons of ordinary prudence and comprehension." *Lum v. Bank of America*, 361 F.3d 217, 223 (3d Cir. 2004), *cert. denied*, 543 U.S. 918 (2004) (citation omitted).  Further, she must plead these elements with *particularity* under Fed. R. Civ. P. 9 (b).  This requires specific allegations of the time, place, and content of the alleged misrepresentation on which she allegedly relied.  *Lum*, 361 F.3d at 223-224.

Friedland fails to include the time, place, and content of the alleged fraud; indeed, the Complaint does not even hint at what the alleged fraud was.  For example, Complaint does not identify any misrepresentations or omissions Friedland received or relied upon to her detriment. Nor does she explain how Unum Life's alleged mailings were made with the intent to induce anyone to do anything or refrain from doing anything.  And, she fails to allege coherently any basis to conclude that she was damaged by any misrepresentations.

There is simply no evidence of any misrepresentation or omission, of any intent by Unum to induce Friedland to do anything or refrain from doing anything, or of any injury to Friedland as a result of any fraud.  *See Lum*, 361 F.3d at 224 (dismissing claim making similarly vague allegations to those made here).  Indeed, if Friedland was "harmed" at all, it was from a decision to deny her claim for benefits under ERISA, not any reliance by Friedland on any purported misrepresentation by Unum.

Friedland also failed to allege obstruction of justice under 18 U.S.C. § 1503, which prohibits the use of threats to "influence[], obstruct[], or impede[] ... the due administration of justice ...."  Here, Friedland must allege that Unum obstructed a *pending* judicial proceeding. *United States v. Cohen*, 301 F.3d 152, 157 (3d Cir. 2002).  Certainly this action cannot serve as the proceeding since it did not exist until after the alleged wrongful conduct occurred.

Nor has Friedland alleged a viable claim of obstruction of justice under 18 U.S.C. § 1512. Section 1512 prohibits the knowing use of, *inter alia,* threats to "influence, delay, or prevent the testimony of any person in an official proceeding" or "cause or induce any person to withhold testimony, or withhold a record, document, or other object, from an official proceeding" or "alter, destroy, mutilate, or conceal and object with intent to impair the object's integrity or availability for use in an official proceeding."

For a viable claim under § 1512, there must be a "nexus" between the conduct at issue and an anticipated judicial proceeding. *Arthur Andersen LLP v. United States*, 544 U.S. 696, 708 (2005). There must be, at least, (1) an anticipated judicial proceeding that (2) is foreseen by the defendant who (3) knows that its actions are likely to affect the proceeding. *Id*. at 707-708.

Once again, Friedland's allegations fall well-short of the mark. In essence, she claims Unum created a claim file for her claim that is somehow (in ways unspecified) different from what the claim file "should" be, and/or pressured claims personnel to employ bad faith claims handling practices. Presumably, Friedland believes that by creating an improper claim file, Unum in some unspecified way tampered with evidence, witnesses or jurors in a non-existent proceeding. And, presumably, because witness and juror tampering violates 18 U.S.C. §§ 1503 and 1512, Friedland apparently believes that creation of the "improper" claim files and "pressuring" employees constitutes predicate acts for RICO purposes.

But there is no allegation that any witness ever gave any false testimony or that documents were withheld from or impaired for use in any proceeding of any type, or that such was even contemplated. This is not, for example, a case in which Unum is alleged to have tampered with witnesses so as to cause the witnesses to testify in a false manner that then caused some third party (such as a state benefits agency) to deny benefits to Friedland. Rather, all that is claimed (and, even then, without specific reference to Friedland's own file) is that Unum did not properly maintain claim files and/or pressured claims personnel and internal adjudicators to implement the so-called "RICO Plan." This is simply not obstruction under §§ 1503 or 1512; therefore, Friedland's failure to plead a predicate act requires dismissal of her RICO claim.

### 4.   Friedland Cannot Plead Proximate Causation

Friedland also failed to allege the necessary causal nexus between the alleged predicate acts and her alleged harm. Friedland must show that (a) she was personally damaged or harmed

and (b) the proximate cause of her harm was Unum's alleged commission of the predicate acts.

*Hemi Group, LLC v. City of New York*, 559 U.S. 1, 9 (2010); *Holmes v. Sec. Investor Prot. Corp., 503* U.S. 258, 268 (1992); *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 497 (1985).

As the Court explained in *Anza v. Ideal Steel Supply Corp.*:

> The Court has indicated the compensable injury flowing from a
> violation of that provision "necessarily is the harm caused by
> predicate acts sufficiently related to constitute a pattern, for the
> essence of the violation is the commission of those acts in
> connection with the conduct of an enterprise."

547 U.S. 451, 457 (2006) (quoting *Sedima,* 473 U.S. at 497).[4]

Friedland cannot demonstrate that any of the alleged predicate acts were the proximate cause of her alleged harm (*i.e.*, the denial of her claim for ongoing disability benefits).  For example, to plead proximate cause for alleged mail fraud, Friedland must show that she detrimentally relied on a fraudulent misrepresentation placed by Unum into the mails.  *Lynch v. Capital One Bank (USA), N.A..*, 2013 WL 2915734 at * 3 (E.D. Pa. June 14, 2013).  But there is no connection between any purported misrepresentation and any injury Friedland allegedly suffered.  To the extent that she has compensable harm at all (which is denied), it arises from the denial of her claim for benefits -- not from her "reliance" on a misrepresentation.  Indeed, this lawsuit proves that she did not rely on any statements by Unum; instead, she reached her own conclusion about whether the denial of benefits was proper.

Further, any theoretical connection between the alleged predicate acts of obstructing justice and the purported injury is not only speculative, it is impossible.  The denial of Friedland's claim for ongoing benefits necessarily came prior to any proceeding to decide whether the denial was appropriate.  Thus, there would be neither a witness nor a juror until well after the claim had been denied.  Any alleged obstruction would occur by definition only *after*

---

[4]     The requirement for proximate cause applies as well to Friedland's claim under 18 U.S.C. § 1962 (d).  *Beck v. Prupis*, 529 U.S. 494, 505 (2000).

the denial of benefits, and therefore cannot have been the proximate cause of the alleged harm

(*i.e.*, the denial of benefits).

### 5. Friedland Lacks Standing To Assert A RICO Claim

RICO's civil-suit provision grants "[a]ny person injured in his business or property *by reason* of a violation of" RICO's substantive provisions the right to sue.  18 U.S.C. §§ 1962 (4). Regardless of whether a RICO violation is properly pled or proven, a RICO plaintiff "only has standing if ... he has been injured in his business or property by the conduct constituting the violation." *Sedima,* 473 U.S. at 496; *see also*, *Amos v. Franklin Financial Services Corp.*, 509 Fed. Appx. 165, 168 n.5 (3d Cir. 2013) (non-precedential, cited for persuasive value); *Lynch*, 2013 WL 2915734 at * 2.  As noted above, Friedland cannot plead harm proximately caused by a RICO violation; therefore, she lacks standing.

## V.   CONCLUSION

For the reasons set forth above, Plaintiff's Complaint should be dismissed with prejudice.

Dated:  October 7, 2013

**STEVENS & LEE, P.C.**

By: */s/ John D. Demmy*.........................................
John D. Demmy (No. 2802)
1105 North Market Street, 7th Floor
Wilmington, DE 19801
Telephone: (302) 425-3308
Facsimile: (610) 371-8515
E-Mail: jdd@stevenslee.com

E. Thomas Henefer
(Pa. No. 55773 – Pro Hac Vice Pending)
111 North Sixth Street
P.O. Box 679
Reading, PA  19603
Telephone: (610) 478-2000
Facsimile: (610) 988-0803
E-Mail: eth@stevenslee.com

Attorneys for Defendants, Unum Group and
Unum Life Insurance Company of America

SL1 1260668v1 010305.00256