IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| KAREN FRIEDLAND, | ) |
| Plaintiff, | ) |
| v. | ) Civ. No. 13-1417-SLR |
| UNUM GROUP and UNUM LIFE INSURANCE COMPANY OF AMERICA, | ) |
| Defendants. | ) |

John S. Spadaro, Esquire of John Sheehan Spadaro, LLC, Hockessin, Delaware. Counsel for Plaintiff.

John D. Demmy, Esquire of Stevens & Lee, P.C., Wilmington, Delaware and E. Thomas Henefer of Stevens & Lee, P.C., Reading, Pennsylvania. Counsel for Defendants.

**MEMORANDUM OPINION**

Dated: June 19, 2014
Wilmington, Delaware

ROBINSON, District Judge

## I. INTRODUCTION

On August 14, 2013, plaintiff Karen Friedland ("plaintiff") filed a complaint against Unum Group ("Unum") and its wholly owned subsidiary, Unum Life Insurance Company of America ("Unum Life") (collectively "defendants"), to challenge Unum Life's denial of her claim for ongoing disability benefits under a long-term disability plan that is regulated by the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001–1461 ("ERISA"). (D.I. 1) Plaintiff asserts three causes of action: (1) claim for benefits under ERISA § 502(a)(1)(B); (2) common law fraud; and (3) violation of the Federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 et. seq., particularly §§ 1962(c) and (d). (D.I. 1 at ¶¶ 42–43, 45–47, 48–51) Plaintiff seeks payment of benefits past due and of future benefits to age 65 discounted to present value, economic losses caused by her loss of her position at Gettysburg College, treble damages under RICO, and attorney fees and costs. (Id. at 28, ¶¶ a–h)

Currently before the court is defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) alleging that: (1) plaintiff's ERISA claim is time barred by the Delaware statute of limitations or, in the alternative, plaintiff cannot recover future benefits under § 1132(a)(1)(B); (2) plaintiff's common law fraud claim is preempted by ERISA; and (3) plaintiff's RICO claim fails to state a claim for relief. (D.I. 7) This court has jurisdiction pursuant to 18 U.S.C. §§ 1331, 1332, and 1367(a).

## II. BACKGROUND

Plaintiff is a Pennsylvania resident and former employee of The Johns Hopkins University, where she was insured against disability pursuant to an employee benefit

plan issued by defendants and governed by ERISA. (D.I. 1 at ¶¶ 1–3) In 1994, plaintiff left her job at Johns Hopkins after she was hospitalized as a result of falling down a flight of steps. (*Id.* at ¶ 10) Defendants agreed that plaintiff was totally disabled, and paid her full disability benefits for about two years until 1996, when plaintiff notified defendants that she would attempt to work part-time as an instructor in the theater department at Carroll Community College. (*Id.*) Early into her part-time work, defendants examined and tested plaintiff's capacity to work. (*Id.* at ¶ 12) On May 18, 1999, defendants concluded that plaintiff's restrictions and limitations were permanent, as confirmed by an independent medical examination and functional capacity evaluation. (*Id.*) Defendants concluded that plaintiff suffered from permanent partial disability. (*Id.*)

In the spring of 2007, plaintiff notified defendants of her employment contract with Gettysburg College for the 2007-2008 school year, whereby she would receive 7.5 hours per week of class time and $50,000 in salary for the school year. (*Id.* at ¶13) After acknowledging receipt of plaintiff's employment contract, defendants determined that plaintiff was still eligible for benefits under her disability plan. (*Id.* at ¶ 14) On January 15, 2010, defendants notified plaintiff that her condition had improved to the point that she was able to work full time, and subsequently discontinued her benefits. (*Id.*)

Plaintiff claims that the discontinuance of her benefits did not result from new medical evidence, but instead from an illegal policy and scheme to reduce expensive payouts, whereby defendants conducted their evaluation of plaintiff's entitlement to

2

benefits through unethical and fraudulent insurance claim-processing standards. (*Id.* at ¶ 19) In exchange for substantial insurance premiums, plaintiff claims that she and others similarly situated relied to their detriment upon the promises and contractual obligations of honest claims handling set forth in the disability policies sold by defendants. (*Id.* at ¶ 20)

## III. STANDARD OF REVIEW

A motion filed under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint's factual allegations. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 545 (internal quotation marks omitted) (interpreting Fed. R. Civ. P. 8(a)). Consistent with the Supreme Court's rulings in *Twombly* and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Third Circuit requires a two-part analysis when reviewing a Rule 12(b)(6) motion. *Edwards v. A.H. Cornell & Son, Inc.*, 610 F.3d 217, 219 (3d Cir. 2010); *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). First, a court should separate the factual and legal elements of a claim, accepting the facts and disregarding the legal conclusions. *Fowler*, 578 F.3d. at 210-11. Second, a court should determine whether the remaining well-pled facts sufficiently show that the plaintiff "has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Iqbal*, 556 U.S. at 679). As part of the analysis, a court must accept all well-pleaded factual allegations in the complaint as true, and view them in the light most favorable to the

3

plaintiff. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Christopher v. Harbury*, 536 U.S. 403, 406 (2002); *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). In this regard, a court may consider the pleadings, public record, orders, exhibits attached to the complaint, and documents incorporated into the complaint by reference. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384-85 n.2 (3d Cir. 1994).

The court's determination is not whether the non-moving party "will ultimately prevail" but whether that party is "entitled to offer evidence to support the claims." *United States ex rel. Wilkins v. United Health Grp., Inc.*, 659 F.3d 295, 302 (3d Cir. 2011). This "does not impose a probability requirement at the pleading stage," but instead "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [the necessary element]." *Phillips*, 515 F.3d at 234 (quoting *Twombly*, 550 U.S. at 556). The court's analysis is a context-specific task requiring the court "to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 663-64.

## IV. DISCUSSION

### A. Statute of Limitations for ERISA Claims

Because ERISA does not contain a statute of limitations for recovery of benefits, the court looks to the statute of limitations for the state law claim that is most analogous to the claim for benefits under ERISA. *See DelCostello v. Int'l Broth. of Teamsters*, 462 U.S. 151, 158–160 (1983). Specifically, the court "borrows" the most analogous statute of limitations from the forum state. *Romero v. The Allstate Corp.*, 404 F.3d 212, 220

(3d Cir. 2005); *Syed v. Hercules, Inc.*, 214 F.3d 155, 159 (3d Cir. 2000). The Third Circuit has held that the one-year statute of limitations found at 10 Del. C. § 8111 is applicable to claims for recovery of benefits under an ERISA plan.[1] *Syed*, 214 F.3d at 159; *see also Gregorovich v. E.I. du Pont de Nemours*, 602 F. Supp. 2d 511, 517 (D. Del. 2009) (identifying 10 Del. C. § 8111 as the applicable statute of limitations on claims for ERISA benefits filed in Delaware).

A non-fiduciary claim such as the one plaintiff filed under § 1132(a)(1)(B) accrues when a claim for benefits has been denied. *Miller v. Fortis Benefits Ins. Co.*, 475 F.3d 516, 520 (3d Cir. 2007) (citations omitted); *see* 10 Del. C. § 8111. Plaintiff's complaint was filed on August 14, 2013, more than one year from the decision to terminate her disability benefits (January 15, 2010), and more than one year from the letter confirming the decision to terminate her disability benefits (September 17, 2010).[2]

---

[1] Contrary to plaintiff's argument, *Klimowicz v. Unum Life Ins. Co. of America*, 296 Fed. App'x 248 (3d Cir. 2008), does not apply to this case. *Id.* at 249–50. In *Klimowicz*, the court applied the statute of limitations applicable to ERISA claims filed in New Jersey. *Id.* at 50. For ERISA claims filed in Delaware, *Syed* is the applicable case law.

[2] Contrary to plaintiff's contention that a second level of administrative appeal was still being pursued as late as September 2012, defendants clearly denied plaintiff's claim for appeal in 2010. In an letter dated September 17, 2010, defendants stated:

> Unum denied your client's disability claim beyond January 15, 2010, in a letter issued on the same date. The letter explained that the claim evidence supported that your client had the residual functional capacity to perform her regular occupation and she no longer met the policy definition of disability.
> . . . .
> Unum Life Insurance Company of America has completed the review of your client's appeal. No further review is available and her appeal is now closed.

(D.I. 10, ex. A at 2, 9)

(*See* D.I. 1 at ¶ 14; D.I. 10, ex. A at 2) Plaintiff's ERISA claim, therefore, is time-barred by the limitations statute.[3]

### B. Preemption of Fraud Claim by ERISA

The Supreme Court has explained, "[t]he purpose of ERISA is to provide a uniform regulatory regime over employee benefit plans." *Aetna Health, Inc. v. Davila*, 542 U.S. 200, 208 (2004). Congress's intent in enacting ERISA was to promote the interests of employees and their beneficiaries in employee benefit plans by "eliminating the threat of conflicting or inconsistent State and local regulation of employee benefit plans." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 99 (1983) (quoting 120 Cong. Rec. 29933 (1974)). Section 514 of ERISA, the "express preemption" provision, reads in pertinent part:

> Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supercede any and all State laws insofar as they may now or hereafter **relate to** any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title.

29 U.S.C. § 1144(a) (emphasis added). The Supreme Court has emphasized that the express preemption provisions of ERISA are "deliberately expansive," noting Congress's emphasis on the "breadth and importance of the preemption provisions." *Pilot Life Ins. v. Dedeaux*, 481 U.S. 41, 45–46 (1987) (citing *Shaw*, 463 U.S. at 98; 120 Cong. Rec. 29197 (1974)); *see also Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 138–39 (1990). ERISA defines "State laws" as "all laws, decisions, rules, regulations, or other State action having the effect of law, of any State." 29 U.S.C. § 1144(c)(1).

---

[3]The court does not need to address plaintiff's claim for future benefits, since her ERISA claim is time-barred by the Delaware limitations statute.

6

The Third Circuit has explained that a state-law claim "relates to" an ERISA plan if "the existence of an ERISA plan was a crucial factor in establishing liability," and "the trial court's inquiry would be directed to the plan." *1975 Salaried Retirement Plan for Eligible Employees of Crucible, Inc. v. Nobers*, 968 F.2d 401, 406 (3d Cir. 1992), *cert. denied*, 506 U.S. 1086 (1993) (citing *Ingersoll-Rand*, 498 U.S. at 143–44).

According to plaintiff's complaint, defendants conducted their evaluation of plaintiff's entitlement to benefits through unethical and fraudulent insurance claim-processing standards. (*See* D.I. 1 at ¶ 19) Plaintiff's fraud allegations, therefore, stem from how defendants handled her ERISA-governed disability policy. (*See id.* at ¶ 20) The existence of plaintiff's ERISA plan is crucial to establish her fraud claim. *See 1975 Salaried Retirement Plan*, 968 F.2d at 406; *see, e.g., Berger v. Edgewater Steel Co.*, 811 F.2d 911, 923 (3d Cir. 1990) (affirming that plaintiff's misrepresentation claims were preempted by ERISA § 514(a) because they related to an employee benefit plan). Similarly, a trial court's inquiry into plaintiff's fraud claim would be necessarily directed at plaintiff's ERISA plan and defendants' conduct surrounding the same. *1975 Salaried Retirement Plan*, 968 F.2d at 406.[4] Consequently, § 1144 preempts plaintiff's fraud

---

[4]Plaintiff cites to *Weiss v. First Unum Life Ins. Co.*, 482 F.3d 254 (3d Cir. 2007), for the proposition that her fraud claim should not be preempted because it does not conflict with her ERISA claim. (*see* D.I. 14 at 14–17) *Weiss* did not address ERISA preemption, but instead discussed whether a federal RICO claim conflicted with the McCarran-Fegruson Act, which prohibits the use of federal law to "invalidate, impair, or supercede" state insurance regulation. *Weiss*, 482 F.3d at 257–259. In fact, the court noted that the state law claims at issue in the case were previously dismissed because they were preempted by ERISA:

> In light of ERISA, the state-law claims were dismissed, and eventually the ERISA claims were also dismissed, leaving only the federal RICO claims. We find ourselves resorting to state-law theories and claims as

7

claim.[5]

### C. RICO Claims

#### 1. Section 1962(c) Claim

Defendants assert that plaintiff has failed to establish a cause of action under § 1962(c) because she has not properly alleged a RICO "enterprise" that is separate from the "persons" (Unum and Unum Life) she sued. (D.I. 8 at 9) Section 1962(c) reads in pertinent part:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c). Title 18 defines "person" to include "any individual or entity capable of holding a legal or beneficial interest in property." 18 U.S.C. § 1961(3). "Enterprise" is defined to include "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." *Id.* § 1961(4).

For purposes of § 1962(c) claims, the defendant "person" and the RICO "enterprise" must be separate and distinct. *See Cedric Kushner Promotions, LTD v.*

---

> justification for the application of civil RICO, despite the fact that those claims would be preempted by ERISA.

*See id.* at 261 n.5.

[5]The court need not address defendants' conflict preemption arguments under the Supremacy Clause in U.S. Const. art. VI because the statutory preemption provision in 29 U.S.C. § 1144 provides sufficient grounds to dismiss plaintiff's state law fraud claim.

8

*King*, 533 U.S. 158, 162 (2001) (agreeing with the government's reading of § 1962(c) to "require some distinctness between the RICO defendant and the RICO enterprise"). According to the Supreme Court in *Cedric Kushner Promotions*, a plaintiff must show that the defendant "person" "conducted or participated in the conduct of the **'enterprise's** affairs,' not just their **own** affairs." *Id.* at 163 (quoting *Reeves v. Ernst & Young*, 507 U.S. 170, 185 (1993)) (emphasis in original). The Third Circuit has held that "a corporation generally cannot be a defendant under § 1962(c) for conducting an "enterprise" consisting of its own subsidiaries or employees, or consisting of the corporation itself in association with its subsidiaries or employees." *Gasoline Sales, Inc. v. Aero Oil Co.*, 39 F.3d 70, 73 (3d Cir. 1994) (citing *Brittingham v. Mobil Corp.*, 943 F.2d 297 (3d Cir. 1991)). Accordingly, "a claim simply against one corporation as both 'person' and 'enterprise' is not sufficient." *Jaguar Cars, Inc. v. Royal Oaks Motor Car Co.*, 46 F.3d 258, 268 (3d Cir. 1995). "Instead, a viable § 1962(c) action requires a claim against defendant 'persons' acting through a **distinct** 'enterprise.'" *Id.* (emphasis added).

For the purposes of § 1962(c), a corporation is not distinct from its subsidiaries, relatives, agents, and affiliates. *Dow Chemical Co. v. Exxon Corp.*, 30 F. Supp. 2d 673, 700 (D. Del. 1998). Plaintiff argues that the alleged RICO enterprise does not consist merely of the defendants or those connected to the defendants, but instead includes outside physicians, outside accountants, and outside vocational experts, which are not defendants' employees, nor can they properly be regarded as defendants' agents under Delaware agency law. (D.I. 14 at 18; D.I. 1 at ¶¶ 6, 49) However, the appropriate

9

inquiry is not whether the participants of the alleged RICO "enterprise" can be properly regarded as defendants' agents. Instead, the issue is whether defendants participated in the conduct of a distinct RICO "enterprise," or merely conducted their own business affairs. *Cedric Kushner Promotions*, 533 U.S. at 163; *see also Metcalf v. PaineWebber Inc.*, 886 F. Supp. 503, 513–14 (W.D. Pa. 1995), *aff'd without op.*, 79 F.3d 1138 (3d Cir. 1996) (stating that in order "to satisfy the enterprise requirement, a complaint must include an allegation that the enterprise included some person or entity operating outside of the . . . defendants' normal scope of business").

In *Shields v. UnumProvident Corporation*, 415 Fed. App'x 686 (6th Cir. 2011), the Sixth Circuit rejected the plaintiff's allegations that the defendant insurance company's "subsidiaries, affiliates, wholly owned companies, customers, policy holders, claimants, independent contractors, and governmental and nongovernmental regulators" were "an enterprise distinct from [the defendant corporation] for RICO purposes." *Id.* at 691. District courts within the Third Circuit agree that a RICO enterprise cannot be created through allegations that an insurer, its affiliated corporate entities, employees, and agents combined to wrongly deny insurance claims. *See Assoc. of N.J. Chiropractors v. Aetna, Inc.*, Civ. No. 09-3761, 2011 WL 2489954, at *6 (D. N.J. June 20, 2011) (rejecting plaintiffs' allegations that a health insurer, its subsidiaries, and several outside vendors acted as a RICO "enterprise" by improperly seeking recovery of medical claim payments from chiropractors); *McBride v. Hartford Life and Acc. Ins. Co.*, Civ. No. 05-6172, 2006 WL 279113, at *3 (E.D. Pa. 2006) (dismissing plaintiff's RICO claim against the defendant disability benefits provider). As

a provider of disability benefits, Unum Life's claims processing relationships with outside independent medical examiners and outside functional capacity consultants are necessarily a part of its own business affairs.

The Supreme Court has recognized that a corporation's owner could be sued as a RICO "person" acting through the corporation as the "enterprise." *Cedric Kushner Promotions*, 533 U.S. at 163. However, the Court distinguished this scenario from the type of claim where a corporation is alleged to be a RICO person based on an alleged association with its own employees. *Id.* at 163–164 (citing *Riverwoods Chappaqua Corp. v. Marine Midland Bank N.A.*, 30 F.3d 339 (2d Cir. 1994)). In this case, plaintiff has asserted the latter type of claim, alleging that defendants acted through their employees and outside vendors to implement the "RICO Plan" as a means of improperly processing benefits claims. (*See* D.I. 1 at ¶¶ 6, 21, 24–40, 49, 51) Such a claim is not sufficient to establish that defendants "conducted or participated in the conduct of the '**enterprise's** affairs,' not just their **own** affairs." *Cedric Kushner Promotions*, 533 U.S. at 162 (emphasis in original). Plaintiff has not plausibly plead facts to imply the existence of an enterprise within the requirements of § 1962(c). *See In re Insurance Brokerage Antitrust Litigation*, 618 F.3d 300, 369–70 (3d Cir. 2010) (applying *Iqbal* and *Twombly* pleading standards to allegations of a RICO enterprise). Plaintiff's § 1962(c) claim, therefore, is dismissed.

### 2. Section 1962(d) Claim

Section 1962(d) provides that "[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." Since §

1962(d) prohibits conspiring to violate § 1962(a), (b), and (c), the viability of plaintiff's § 1962(d) claim depends on the legal sufficiency of its § 1962(c) claim. *See Jaguar Cars*, 46 F.3d at 262. The court has already determined that plaintiff's § 1962(c) claim is legally insufficient. Accordingly, plaintiff's claim for conspiracy under § 1962(d) is dismissed. *In re Insurance Brokerage*, 618 F.3d at 373 ("a § 1962(d) claim must be dismissed if the complaint does not adequately allege 'an endeavor which, if completed, would satisfy all of the elements of a substantive [RICO] offense.") (citation omitted).

## V. CONCLUSION

For the reasons stated above, the court finds that: (1) plaintiff's ERISA claim is time-barred by the limitations statute; (2) plaintiff's fraud claim is preempted by ERISA; and (3) plaintiff's complaint fails to state a cause of action against defendants Unum and Unum Life under RICO. Therefore, defendants' motion to dismiss is granted with respect to all claims.